# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARVELL KING,
        Plaintiff,

v.                                                              Case No. 19-C-1295

STEPHANIE OLMSTED, *et al.*,
        Defendants.

## SCREENING ORDER

Plaintiff Marvell King, an inmate confined at the Green Bay Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. This order resolves plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

### I. MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On September 12, 2019, I ordered plaintiff to pay an initial partial filing fee of $3.97. Docket No. 6. Plaintiff paid that fee on October 15, 2019. I will grant plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. SCREENING THE COMPLAINT

**A. Federal Screening Standard**

Under the PLRA, I must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, I apply the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–*

*Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). I construe *pro se* complaints liberally and hold them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

**B. Plaintiff's Allegations**

The plaintiff names as defendants Wisconsin Division of Community Corrections ("DCC") Agent Stephanie Olmsted, who was the plaintiff's probation officer, and Administrative Law Judge ("ALJ") Jonathan Nitti. Docket No. 1 ¶ A.2.

The plaintiff alleges that on October 5, 2017, he was arrested after Ashley Schultz (not a defendant) accused him of punching her in her eyes. *Id.* ¶ B.1–2. Deputy Nick Helstern (not a defendant) responded to a report of a domestic dispute. *Id.* ¶ B.1. He observed that both of Schultz's eyes were swollen and photographed her injuries. *Id.* ¶ B.3. Helstern spoke with the plaintiff at his work, and the plaintiff said that he and Schultz "had gotten into a verbal argument, but nothing really more." *Id.* Nonetheless, Helstern arrested the plaintiff and took him into custody. *Id.* The plaintiff was charged with substantial battery and disorderly conduct, both as a repeat offender. *Id.* ¶ B.4.

A trial on the plaintiff's charges began January 25, 2018. *Id.* A photo of Schultz was introduced showing that only one eye was swollen. *Id.* ¶ B.3. Helstern allegedly gave conflicting information about fixtures on the wall, which were contradicted by photos the plaintiff's attorney submitted into evidence. *Id.* The plaintiff admitted he pushed Schultz only after she had struck him "several times in the face." *Id.* The plaintiff alleges that Schultz and her friend changed their statements several times, differing from earlier statements they had given to police. *Id.* ¶ B.5. A jury acquitted the plaintiff of both charges,

but he remained in custody pending a hearing on the revocation of his extended supervision. *Id.* ¶ B.4.

At the revocation hearing, Schultz testified and allegedly again changed her statement, now alleging that the plaintiff had broken her nose after punching her. *Id.* ¶ B.5. ALJ Nitti questioned Schultz about her broken nose, even though her original statement did not mention anything about her nose. *Id.* ¶ B.6. The plaintiff alleges that ALJ Nitti did not follow DCC guidelines during the revocation hearing and improperly relied on Schultz's conflicting statement. *Id.* ¶ B.7–8. He alleges that ALJ Nitti brought up "other incident" in his findings of fact that had not been submitted as an allegation in support of revocation. *Id.* ¶ B.8. The plaintiff asserts that ALJ Nitti revoked his supervision based on "personal discretion" and not facts or evidence. *Id.* ¶ B.9.

The plaintiff alleges that Agent Olmsted failed to follow DCC revocation procedures when she "continued to pursue Ashley Schultz['s] statements when the Courts found her statements not to be of facts." *Id.* ¶ B.10. He asserts that the results of the trial, where he was acquitted, "should have been considered strong evidence" (presumably that the plaintiff was not guilty of violating his supervised release) at the revocation hearing. *Id.* ¶ B.11. The plaintiff asserts that Olmsted wrongly requested the maximum extension of his supervision, and when asked why the maximum term was appropriate stated, "Why not[?]" *Id.*

The plaintiff seeks $3 million total in compensatory and punitive damages. *Id.* ¶ C.

**C. Analysis**

Because the plaintiff does not allege that he has successfully appealed or otherwise overturned the revocation of his supervised release, his claims are barred

4

under *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Easterling v. Siarnicki*, 435 F. App'x 524, 526 (7th Cir. 2011) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)) ("*Heck* applies to both a prisoner's original sentence and to reimprisonment upon revocation of parole."). The trial on the battery and disorderly conduct charges was a separate proceeding from the revocation hearing. *Lacey v. Unknown Parole Agent*, No. 12 C 9406, 2012 WL 6217529, at *3 (N.D. Ill. Dec. 12, 2012) (citing *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972); *United States v. Neal*, 512 F.3d 427, 435 (7th Cir.2008)). *Heck* therefore bars his claims challenging his revocation sentence even though he was not convicted at trial of the offenses that led to the revocation of his supervised release. If the plaintiff wishes to contest his revocation proceedings or sentence, his proper recourse is to appeal the judgment from his revocation hearing and seek a writ of habeas corpus, not to seek damages in this case. *See Heck*, 512 U.S. at 481 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)).

Even if the plaintiff's claims were not barred by *Heck*, he would fail to state a claim against ALJ Nitti. ALJ Nitti is absolutely immune from civil liability in the performance of his judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Nowicki v. Delao*, 506 F. App'x 514, 517 (7th Cir. 2013) (recognizing that Wisconsin ALJs have absolute immunity). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810–11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993). Holding a revocation hearing and revoking the plaintiff's extended

supervision are actions taken within the scope of ALJ Nitti's judicial function. *See Dawson v. Newman*, 419 F.3d 656, 661–62 (7th Cir. 2005).

Nor does the plaintiff state a claim against Agent Olmstead for allegedly violating DCC revocation procedures. Section 1983 "protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). Moreover, because the plaintiff was technically still a prisoner at his revocation hearing, he was not entitled to "the full panoply of rights that the Constitution guarantees to criminal defendants." *See Neal*, 512 F.3d at 435 (citing *Morrissey*, 408 U.S. at 485). The plaintiff does not allege that he was denied any of the limited rights given to probationers and parolees before and at revocation hearings. *See id.*

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for leave to proceed without prepaying the filing fee (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) because the complaint fails to state a claim and seeks monetary relief from a defendant who is immune to such relief.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from the plaintiff's prison trust account the $346.03 balance of the filing fee **by collecting payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the account in any month in**

**which either (1) the balance in the account exceeds $10 or (2) the income credited to the account in the preceding month exceeded $10.** The collected payments shall be sent to the clerk of court. The payments shall be clearly identified by the case name and number assigned to this case. If the plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 29th day of October, 2019

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge